## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH BEAN,<br><br>                Plaintiff,<br><br>  v.<br><br><br>ZENDESK, INC., MIKKEL SVANE, ARCHANA AGRAWAL, CARL BASS, MIKE CURTIS, MIKE FRANDSEN, BRANDON GAYLE, STEVE JOHNSON, HILARIE KOPLOW-MCADAMS, THOMAS SZKUTAK, and MICHELLE WILSON,<br><br>                Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Keith Bean ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Zendesk, Inc., ("Zendesk" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Zendesk and the Defendants.

## SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against Zendesk and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the Company's proposed merger with Momentive Global Inc. ("Momentive") (the "Proposed Transaction").

2.     On October 28, 2021, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Momentive.  Pursuant to the terms of the Merger Agreement, Momentive's stockholders will receive 0.225 shares of Parent for each share of Momentive common stock owned

3.     On December 6, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Registration Statement with the SEC (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Zendesk and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Zendesk shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Zendesk shares.

9.      Defendant Zendesk is incorporated under the laws of California and has its principal executive offices located at 989 Market Street, San Francisco, California 94103.  The Company's common stock trades on the New York Stock Exchange under the symbol "ZEN."

10.     Defendant Mikkel Svane ("Svane") is and has been the Company's Chief Executive Officer and member of the Board at all times during the relevant time period.

11.     Defendant Archana Agrawal ("Agrawal") is and has been a director of Zendesk at all times during the relevant time period.

12.     Defendant Carl Bass ("Bass") is and has been a director of Zendesk at all times during the relevant time period.

13.     Defendant Mike Curtis ("Curtis") is and has been a director of Zendesk at all times during the relevant time period.

14.     Defendant Mike Frandsen ("Frandsen") is and has been a director of Zendesk at all times during the relevant time period.

15.     Defendant Brandon Gayle ("Gayle") is and has been a director of Zendesk at all times during the relevant time period.

16.     Defendant Steve Johnson ("Johnson") is and has been a director of Zendesk at all times during the relevant time period.

17.     Defendant Hilarie Koplow-McAdams ("Koplow-McAdams") is and has been a director of Zendesk at all times during the relevant time period.

18.     Defendant Thomas Szkutak ("Szkutak") is and has been a director of Zendesk at all times during the relevant time period.

19.     Defendant Michelle Wilson ("Wilson") is and has been a director of Zendesk at all times during the relevant time period.

20.     Defendants Svane, Agrawal, Bass, Curtis, Frandsen, Gayle, Johnson, Koplow-McAdams, Szkutak, and Wilson are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, along with Defendant Zendesk, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22.     Zendesk was founded in 2007 and is a service-first customer relationship management company, built to give organizations of all sizes, in every industry, the ability to

4

deliver a transparent, responsive, and empowering customer experience. With solutions designed to address an increasingly broad set of customer interactions, Zendesk allows organizations to deliver omnichannel customer service and customize and build apps across the customer journey. Zendesk has evolved its offerings over time to product and platform solutions that work together to help organizations understand the broader customer journey, improve communications across all channels, and engage where and when it's needed most.

### The Company Announces the Proposed Transaction

23.     On November 15, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> SAN FRANCISCO & SAN MATEO, Calif.--(BUSINESS WIRE)--Zendesk (NYSE: ZEN) and Momentive (NASDAQ: MNTV) have entered into a definitive agreement under which Zendesk will acquire Momentive, including its iconic SurveyMonkey platform. The terms of the transaction provide for Momentive stockholders to receive 0.225 shares of Zendesk stock for each share of Momentive stock, a ratio which represents an implied value of approximately $28 per outstanding share of Momentive stock based on the 15-day volume weighted average price of Zendesk common stock up to and including October 26, 2021.

> Zendesk expects the combination to be growth accretive in its first full operating year and accelerate Zendesk's revenue plan to $3.5 billion in 2024, one year ahead of its previous target. The companies' respective sizable customer bases and complementary capabilities are expected to provide significant opportunity for joint product adoption and increasing Momentive's enterprise traction. Zendesk will reinvest savings from scale efficiencies into compelling growth opportunities to support the combination. Upon the close of the transaction, Momentive CEO Zander Lurie will continue to lead Momentive's strong management team.

> "The SurveyMonkey brand is iconic and we've admired their business from afar since the inception of Zendesk. They truly democratized an industry—almost everyone in the world has responded to one of their surveys at some point," said Mikkel Svane, CEO & Founder, Zendesk. "We're very excited to have them join the Zendesk mission along with Momentive's market research and insights products and together create a powerful new Customer Intelligence company. We will deliver a rich,

colorful picture of every customer so businesses really understand their customers and can build more authentic relationships."

"We look forward to combining with Zendesk to advance our mission and accelerate our long-term growth strategy," said Zander Lurie, CEO, Momentive. "This is a testament to the strength of our agile products and talented team. Zendesk and Momentive share a culture centered around our people, our communities and the customers we serve. The synergies between our companies are proximate and compelling. We are uniquely positioned to make Customer Intelligence a reality while delivering significant value for our shareholders."

**Acquisition to Create Powerful New Customer Intelligence Company**

In today's digital-first economy, it is imperative to build more meaningful relationships with customers. Meaning comes from a deep understanding of the customer and their experiences. Although businesses often have an endless supply of data, they lack actionable and personalized customer intelligence. Instead, businesses are left with a picture of the customer that is one dimensional, impersonal and incomplete.

Zendesk pioneered the ability to respond to what customers say and do, making it easier to deliver superior customer service. Momentive is a leader in capturing how customers think and feel, helping companies make critical decisions quickly and confidently.

With Momentive, Zendesk will create what businesses really need—a customer intelligence company that connects what customers say and do, with how they think and feel. The combination will give businesses the ability to:

Listen to your customers: Collect critical information about customer needs, experiences and expectations

Develop a rich picture: Bring a customer into focus by combining transactional data with market research and insights for the context to truly understand them

Act on insights: Empower teams to take action with the full breadth of data about their customers as well as feedback and market insights to improve customer interactions

**Transaction Terms**

Following a comprehensive review, the boards of directors of Zendesk and Momentive have approved the transaction.

The terms of the transaction provide for Momentive stockholders to receive 0.225 shares of Zendesk stock for each share of Momentive stock, a ratio which represents an implied value of approximately $28 per outstanding share of Momentive stock based on the 15-day volume weighted average price of Zendesk common stock up to and including October 26, 2021. Upon closing of the transaction, Zendesk stockholders will own approximately 78% of the combined company and Momentive stockholders will own approximately 22% of the combined company. The transaction, which is anticipated to close in the first half of 2022, is subject to approval by Zendesk stockholders and Momentive stockholders, the receipt of required regulatory approvals and other customary closing conditions. The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

Zendesk has published a presentation to provide an overview of the transaction, available on both Zendesk and Momentive's investor relations websites. Additional details and information about the terms and conditions of the transaction will be available in Current Reports on Form 8-K to be filed by Zendesk and Momentive with the Securities and Exchange Commission.

**Quarterly Financial Results**

In separate press releases issued today, Zendesk announced financial results for the third quarter of 2021 and Momentive announced preliminary results for its third quarter of 2021. Momentive will issue a press release to share its full third quarter financial results on November 9, 2021.

**Conference Call and Webcast**

Today at 2:00 p.m. (PT) / 5:00 p.m. (ET), Zendesk will host a conference call to discuss its Q321 earnings and the transaction. The live video webcast can be accessed through Zendesk investor relations website at https://investor.zendesk.com. A replay of the webcast will be available for 12 months.

**Advisors**

Goldman Sachs & Co. LLC is serving as lead financial advisor and Centerview Partners LLC is also serving as financial advisor to Zendesk. Hogan Lovells US LLP is serving as legal counsel to Zendesk. Allen & Company LLC and J.P. Morgan Securities LLC are serving as equal lead

financial advisors and Wilson Sonsini Goodrich & Rosati Professional Corporation is serving as legal counsel to Momentive.

### FALSE AND MISLEADING STATEMENTS
### AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

24.      On December 6, 2021, the Company authorized the filing of the Registration Statement with the SEC.   The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

25.      Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Financial Projections

26.      The Registration Statement contains projections created by management of the companies, but fails to provide material information concerning such.

27.      The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]   Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

28.     In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

29.     Specifically, with respect to the projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures.

30.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Financial Opinion**

31.     The Registration Statement contains the financial analyses and opinion of Allen & Company LLC ("Allen & Company") and J.P. Morgan Securities LLC ("J.P. Morgan") concerning the Proposed Transaction, but fails to provide material information concerning such.

32.     With respect to Allen & Company's *Selected Public Companies Analyses* for Momentive and Zendesk, the Registration Statement fails to disclose the individual multiples and metrics for each of the companies observed by Allen & Company in the analyses.

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND   EXCHANGE   COMMISSION   (May   17,   2017),   *available   at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

33.     With respect to Allen & Company's *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each of the transactions observed by Allen & Company in the analyses.

34.     With respect to Allen & Company's *Discounted Cash Flow Analysis* for Momentive, the Registration Statement fails to disclose: (i) Momentive's terminal values; and (ii) the inputs and assumptions underlying Allen & Company's use of the discount rates ranging from 8.0% to 9.25%; and (iii) the inputs and assumptions underlying Allen & Company's use of the perpetuity growth rates ranging from 3.0% to 3.5%.

35.     With respect to Allen & Company's *Discounted Cash Flow Analysis* for Zendesk, the Registration Statement fails to disclose: (i) Zendesk's terminal values; and (ii) the inputs and assumptions underlying Allen & Company's use of the discount rates ranging from 7.25% to 8.5%; and (iii) the inputs and assumptions underlying Allen & Company's use of the perpetuity growth rates ranging from 3.0% to 3.5%.

36.     With respect to Allen & Company's analysts' price targets analyses, the Registration Statement fails to disclose the price targets observed in the analyses, as well as the sources thereof.

37.     With respect to J.P. Morgan's *Public Trading Multiples Analyses* for Momentive and Zendesk, the Registration Statement fails to disclose the individual multiples and metrics for each of the companies observed by J.P. Morgan in its analyses.

38.     With respect to J.P. Morgan *Discounted Cash Flow Analysis* for Momentive, the Registration Statement fails to disclose: (i) Momentive's terminal value; (ii) the inputs and assumptions underlying J.P. Morgan's use of the discount rates ranging from 9.0% to 10.0%; and

(iii) the inputs and assumptions underlying J.P. Morgan's use of the terminal growth rates ranging from 3.0% to 4.0%; and (iv) the fully-diluted shares outstanding used in the analysis.

39.     With respect to J.P. Morgan *Discounted Cash Flow Analysis* for Zendesk, the Registration Statement fails to disclose: (i) Zendesk's terminal value; (ii) the inputs and assumptions underlying J.P. Morgan's use of the discount rates ranging from 8.25% to 9.25%; (iii) the inputs and assumptions underlying J.P. Morgan's use of the terminal growth rates ranging from 3.0% to 4.0%; and (iv) the fully-diluted shares outstanding used in the analysis.

40.     With respect to J.P. Morgan's *Discounted Equity Research Analyst Price Targets* analyses, the Registration Statement fails to disclose the price targets observed in the analyses, as well as the sources thereof.

41.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

42.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

47.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore

negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

48.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

49.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

51.     The misrepresentations and omissions in the Registration Statement are material

to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

52.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Zendesk within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Zendesk, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

57.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 30, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*